UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ST PAUL FIRE AND MARINE INSURANCE COMPANY, § § § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. H-05-3811 |
| § | |
| THEODORE F LABUZAN, *et al*, § § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Pending before the Court is the plaintiff's, St. Paul Fire And Marine Insurance Company ("St. Paul"), motions for partial summary judgment regarding the validity of the defendant's asserted cause of action and the standing of DeeAnn S. Labuzan (Docket Entry Nos. 129 and 131, respectively). The defendants, Theodore F. Labuzan and DeeAnn S. Labuzan (the "Labuzans"), filed responses to St. Paul's motions (Docket Entry Nos. 144 and 146) and St. Paul filed briefs in support of its motions (Docket Nos. 147 and 149). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby denies the plaintiff's motions in part and grants them in part.

### II. Factual Background

The pertinent facts in this dispute are set forth in the Court's earlier memorandum opinion and order granting in part and denying in part two motions for summary judgment (Docket Entry No. 39) and the Fifth Circuit's opinion in this case, dated August 18, 2009 (Docket Entry No. 112).

### III. Contentions

#### A. The Plaintiff's Contentions

St. Paul asserts that it is entitled to summary judgment on the Labuzans' cause of action for a breach of the automatic stay. It argues that it did not violate the automatic stay, and even if it did, it caused no damages. St. Paul also states that the Labuzans failed to identify specific damages suffered as a direct result of the alleged stay violation. Moreover, St. Paul maintains that, even if the Labuzans established a violation, the upper limit of recovery has been established by the Fifth Circuit at $202,849.12. Therefore, it argues that there is no need for a trial because: (a) all elements of a stay violation claim have not been established and (b) St. Paul would agree to a remittitur of $202,849.12 against the damages previously awarded by this Court (approximately $32 million) if the Court found that the Labuzans established the elements of their claim. Lastly, St. Paul states that, under Fifth Circuit precedent, Ms. Labuzan has no standing to bring a claim.

#### B. The Defendants' Contentions

The Labuzans assert that summary judgment is improper on their claims. To this end, they state that they have standing under Fifth Circuit precedent and have properly evidenced a prima facie case of a breach of the automatic stay. Further, they maintain that all of their pleaded damages are non-speculative and were caused by St. Paul's malfeasance. Lastly, the Labuzans state that they have not abandoned the affirmative defense of St. Paul's breach of the automatic stay.

### IV. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

### V. Analysis & Discussion

#### A. The Automatic Stay

"The 'automatic stay' is a statutory injunction arising upon the commencement of the [bankruptcy] case; and the injunction is 'automatic' in that it arises without the necessity of a formal court order." *In re Wingard*, 382 B.R. 892, 899 (Bankr. W.D. Pa. 2008). The primary effect "of the automatic stay provisions [is] to effectively stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and [his] creditors . . . ." *Taylor v. Slick*, 178 F.3d 698, 702 (3rd Cir. 1999) (quoting *Zeoli v. RIHT Mortgage Corp.*, 148 B.R. 698, 700 (D.N.H. 1993)) (emphasis omitted). On this issue, the Fifth Circuit has stated that:

> The automatic stay is designed to protect creditors as well as debtors. Without the stay, creditors might scramble to obtain as much property of the debtor's limited estate as possible. The automatic stay prevents such a scramble by providing "breathing room" for a debtor and the bankruptcy court to institute an organized repayment plan. *In re Stembridge*, 394 F.3d 383, 387 (5th Cir. 2004). It allows for the equitable disbursement of estate property among creditors. *See Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) ("The purposes of the bankruptcy stay under 11 U.S.C. § 362 . . . [include] 'further[ing] equity of distribution among the creditors by forestalling a race to the courthouse.'" (quoting *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985))).

*In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005). As such, "section 362(k) of the Bankruptcy Code provides the debtor an express cause of action against creditors who willfully violate the automatic stay." *In re Harlan*, 402 B.R. 703, 710 n.1 (Bankr. W.D. Va. 2009) (citing 11 U.S.C. § 362(k)[1]); *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 536 (5th Cir. 2009). In

---

[1] In pertinent part, 11 U.S.C. § 362(k) provides that:
   (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
   (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

order to prove a violation of § 362(k), a plaintiff must establish by a preponderance of the evidence that: "(1) [the defendant knew] of the existence of the stay; (2) [the defendant's] actions were taken intentionally; and (3) those actions constituted stay violations." *In re Collier*, 410 B.R. 464, 472 (Bankr. E.D. Tex. 2009) (citing *Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008)).

### 1. The Letter and Violation of the Stay

"[T]he Supreme Court has recognized that [11 U.S.C. § 541, which describes the bankruptcy estate,] is read broadly and is interpreted to 'include[] all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property.'" *In re Burgess*, 392 F.3d 782, 785 (5th Cir. 2004) (quoting *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05 & n.9 (1983))). The automatic stay prohibits "any act to obtain possession of property of the [bankruptcy] estate or of property from the estate or to exercise control over property of the estate . . . ." 11 U.S.C. § 362(a)(3). The scope of the automatic stay includes "claims that belong to the debtor under applicable state (or federal) law, and claims that seek to recover property of the estate that is controlled by a person or entity other than the debtor." *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 588 (5th Cir. 2008). As such, if the Labuzans can establish that St. Paul has attempted to exercise control over assets of the bankruptcy estate (including debts owed to the bankruptcy estate), then they have established a violation of the automatic stay. The Labuzans assert that St. Paul breached this standard by sending a letter to the owners of Contractor Technology, Ltd.'s ("CTL") ongoing projects (the "letter"), advising them of CTL's bankruptcy filing.

In the letter, St. Paul told the project owners that if they paid any more money to CTL, and if St. Paul was later required to pay under its bonds, then St. Paul would subtract from its

total liability to the project owner any amounts the project owners paid to CTL. Specifically, the letter provided, in pertinent part, that:

> St. Paul Travelers asserts that any contract funds from your contracts with [the Labuzans] that you are presently holding are trust funds for the payment of outstanding supplier and material bills as well as other completion costs, incurred both prior and subsequent to the filing of the petition. In the event any funds are disbursed on the projects prior to the assumption of the contract by CTI, and without St. Paul Travelers' approval, St. Paul Travelers will consider its obligation discharged to the extent the contract funds are insufficient to cover claims and completion costs.

As the non-movant in a motion for summary judgment, the Labuzans must proffer sufficient evidence to allow a reasonable jury to return a verdict in his favor. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). The above quoted portion of the letter provides some evidence that St. Paul has attempted to "exercise control over property of the estate" by, in essence, instructing the project owners not to make any additional payments to CTL. Accordingly, the Labuzans have presented sufficient evidence of a violation of the automatic stay to avoid summary judgment.

### 2. Causation and the Automatic Stay

In a second point of argument, St. Paul asserts that the Labuzans have failed to evidence that their alleged damages were caused by a breach of the automatic stay. To this end, it argues that:

> In order to recover for a violation of the automatic stay, [the Labuzans are] required to prove that "(1) the actions taken are in violation of the automatic stay; (2) the violation was willful; and (3) the debtor was injured *as a result of the violation*." *Clayton v. King (In re Clayton)*, 235 B.R. 801, 806 (Bankr. M.D. NC 1998) (emphasis added); *see generally*, *Brown v. Chesnut* (*In re Chesnut*), 422 F.3d 298, 302 (5th Cir. 2005); *Sanchez v. Ameriquest Mortgage Co.* (*In re Sanchez*), 2007 Bankr. LEXIS 2506 (Bankr. S.D. Tex. July 24, 2007). Causation is thus a necessary element of proving a stay violation. *See In re Hughes-Bechtol*, 117 B.R. at 906.

The Court disagrees.

St. Paul does not cite binding authority providing that—as part of a prima facie case of a violation under § 362(k)—the Labuzan's must evidence injury resulting from a breach of the automatic stay. The Fifth Circuit precedent cited by St. Paul actually provides that "there are three elements to a claim under [§ 362(k)]: (1) the defendant must have known of the existence of the stay; (2) the defendant's acts must have been intentional; and (3) these acts must have violated the stay." *Chesnut*, 422 F.3d at 302; *In re Sanchez*, 372 B.R. 289, 313 (Bankr. S.D. Tex. 2007). Further, the Court has found no binding precedent supporting St. Paul's position. Therefore, summary judgment is inappropriate on this issue. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) ("To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action."). However, to the extent that St. Paul argues that specific damages alleged by the Labuzans are inappropriate, the Court will treat these arguments as requests for partial summary judgment on these issues. *See* Fed. R. Civ. P. 56(d); 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2737.

### 3. The Alleged Damages

St. Paul argues that the Labuzans have impermissibly attempted to broaden the scope of their claim by including damages that are speculative and/or beyond the scope of their standing as a pre-petition creditor. This argument is premised, in part, on the Fifth Circuit's statement that "the Labuzans, *as pre-petition creditors of CTL*, have standing to assert a claim against St. Paul. Accordingly, to the extent the Labuzans' claims are based on their status as owners/equity holders of CTL, § 362(k) cannot be invoked." *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 545 (5th Cir. 2009) (emphasis added); *see also Little v. KPMG LLP*, No. SA-07-CA-621-FB, 2008 WL 576226, at *5 (W.D. Tex. Jan. 22, 2008) ("[F]ederal law require[s] plaintiffs

to demonstrate non-speculative damages to pursue a claim."). The Court analyzes several of the Labuzans' alleged damages below.

Initially, the Labuzans state that, as a result of St. Paul's actions, Mr. Labuzan was injured through a loss of wages from CTL (due to CTL's liquidation). Lost wages do not arise from a creditor/debtor relationship, but rather from an employer/employee affiliation. Therefore, this assertion is not premised on the Labuzans' relationship with CTL as a pre-petition creditor. The Labuzans do not cite any authority contradicting this conclusion. Therefore, these damages are not available in the present case.

Second, the Labuzans argue that, due to confusion regarding transfers from CTL's debtor in possession accounts, certain money owed to the IRS was not paid by CTL. They state that these funds should have been paid to the IRS prior to conversion to Chapter 7, and since the money was not paid, they became liable (as guarantors) for the taxes. The Labuzans allege that, but for St. Paul's interference, this damage would not have occurred. They do not cite to any law establishing this tax lien as a claim against the bankruptcy estate.

In a third point of argument, the Labuzans state that they have "suffered numerous judgments as the guarantor of the Debtor's obligations . . . ." On this issue, the Labuzans further assert that "St. Paul's wrongful conduct of 'freezing funds' and forcing a conversion from Chapter 11 Reorganization to a Chapter 7 liquidation has greatly increased the Labuzans damages by preventing [CTL's] debts from being satisfied by CTL instead of the Labuzans." Lastly, the Labuzans state that they "incurred extraordinary amounts of legal fees after the collapse of CTL, including fees to defend many of the lawsuits that are described above."

With regard to the Labuzan's second and third damage claims, St. Paul argues that they have impermissibly attempted to broaden the scope of their claims by alleging speculative

damages. The Labuzans state that, but for St. Paul's malfeasance, CTL would have continued operating, leading to: (a) repayment of the debts leading to the judgments against the Labuzans (b) payment of their taxes. However, the Labuzans fails to proffer any evidence that CTL had, or would have gained, sufficient funds to do either of these things. As such, these allegations are not supported by any evidence and summary judgment is proper on this issue.

Lastly, with regard to punitive damages, St. Paul asserts that the Labuzans are not entitled to punitive damages, but if they are, the ratio of actual to punitive damages can only be 1:1 (at maximum). In support of this assertion, St. Paul cites *Exxon Shipping Co. v. Baker*, 128 S.Ct. 2605, 2634 (2008). However, this case actually states that "the Court finds that a 1:1 ratio is a fair upper limit in such *maritime* cases." *Id.* (emphasis added). Under applicable Fifth Circuit precedent, a higher ratio of punitive to actual damages is acceptable. *See Lewis v. Pugh*, 289 Fed. Appx. 767, 777 (5th Cir. 2008) (unreported opinion). Accordingly, summary judgment is improper on this issue.

### B. Affirmative Defenses and Waiver

St. Paul asserts that the Labuzans' "affirmative defense of whether the Surety contributed to its own [harm] by violating the automatic stay . . . was abandoned . . . ." To this end it cites the Fifth Circuit to have stated that "the Labuzans abandoned their only affirmative defense: St. Paul's claimed automatic-stay violation." However, when quoted in full, the court above actually stated that: "*Because the district court's ruling precluded the Labuzans from asserting a § 362(k) claim against St. Paul*, the Labuzans abandoned their only affirmative defense: St. Paul's claimed automatic-stay violation." *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 538 (5th Cir. 2009). St. Paul cites no other law in support of its assertion.

"The Fifth Circuit has held repeatedly that if a party fails to pursue a claim or defense beyond the initial pleading, the issue is deemed abandoned." *Stewart v. City of Houston*, No. H-07-4021, 2009 WL 2849728, at *8 (S.D. Tex. Sept. 3, 2009) (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Vela v. City of Houston*, 276 F.3d 659, 678–79 (5th Cir. 2001)); *Looney v. Irvine Sensors Corp.*, No. 3:09-CV-0840-G, 2010 WL 532431, *4 n.3 (N.D. Tex. Feb. 15, 2010). In contrast, where "the defendants indicated [a continued] intent to pursue their [affirmative] defense" the Fifth Circuit has not found abandonment. *Huss v. Gayden*, 465 F.3d 201, 205 (5th Cir. 2006) (vacated on other grounds). The Court believes that the present case falls into the latter category.

The Labuzans actively pursued their affirmative defense at the outset of this case. As evidenced by the Fifth Circuit's statement from its earlier opinion in this case, only after this court erroneously precluded the Labuzans from bringing an automatic stay claim was the affirmative defense no longer pursued. Accordingly, the Court finds that the Labuzans displayed the requisite intent to pursue this affirmative defense, and thus, no abandonment has occurred. Lastly, to the extent that St. Paul argues that the Labuzans cannot assert a violation of the automatic stay as an affirmative defense for the same reasons that they cannot assert the violation as an independent claim, the Court disagrees for the same reasons stated earlier in this opinion.

### C. Standing

The Fifth Circuit has previously stated that "the Labuzans, as pre-petition creditors of CTL, have standing to assert a claim against St. Paul. Accordingly, to the extent the Labuzans' claims are based on their status as owners/equity holders of CTL, § 362(k) cannot be invoked." *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 545 (5th Cir. 2009). Premised upon this statement, St. Paul asserts that Ms. Labuzan lacks standing to bring claims because "the

Bankruptcy Court expressly disallowed [her] sole Proof of Claim . . . ." The Labuzans argue that, since the Fifth Circuit (referring to the Labuzans in the *plural*) stated that *they* have a claim against the bankruptcy estate, Ms. Labuzan must have standing as a creditor. However, the only actual assertion that Ms. Labuzan is a creditor was made in proof of claim no. 777. To the extent that the Labuzans assert that Ms. Labuzan has standing under claim no. 777, this is incorrect; that claim was disallowed in its entirety. As such, since Ms. Labuzan does not have a pending claim against the bankruptcy estate, she cannot be one of CTL's creditors and, pursuant the Fifth Circuit's previous ruling, she does not have standing in the present lawsuit.

### VI. Conclusion

Based on the above, the Court hereby holds that St. Paul's motions for summary judgment are GRANTED IN PART and DENIED IN PART.[2]

It is so **ORDERED.**

SIGNED at Houston, Texas this 22nd day of March, 2010.

Kenneth M. Hoyt
United States District Judge

---

[2] Any requested relief that is not expressly granted herein is hereby denied.